**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| MARY ANN WOLF,<br><br>        Plaintiff,<br><br>             v.<br><br>PRD MANAGEMENT, INC., et al.<br><br>        Defendants. | Civil No. 11-2736<br>(RMB/JS)<br><br>**OPINION** |

Appearances

Richard J. Heleniak
Messa & Associates
2091 Springdale Road, Suite 2
Cherry Hill, NJ 08003
        Attorneys for Plaintiff

Michael S. Friedman
Jackson Lewis LLP
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102

Penelope Price Jones
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1735 Market Street, Suite 3000
Philadelphia, PA 19103
        Attorneys for Defendants

**Bumb**, UNITED STATES DISTRICT JUDGE:

    Plaintiff Mary Ann Wolf (the "Plaintiff"), a former employee of Defendant PRD Management, Inc. ("PRD)" alleges that PRD, PRD's President James McGrath ("McGrath"), and Director of Special Projects and Strategic Planning Karin McGrath Dunn

("Dunn") (and, collectively, the "Defendants") terminated her employment because of her age, in violation of the Age Discrimination in Employment Act (the "ADEA") 29 U.S.C. § 621.[1] Defendants have moved for summary judgment, arguing that Plaintiff was fired for legitimate non-discriminatory reasons. For the reasons set forth below, Defendants' motion is DENIED.

I. Background

    A. The Parties

PRD is a company that specializes in the management of federally-subsidized affordable senior, disabled, and multi-family housing complexes throughout the region. [Dkt. No. 33, Defendants' Statement of Undisputed Material Facts ("DSUMF") ¶¶ 1-2)].

In 1991, Plaintiff began working for PRD at the age of 48. (DSUMF ¶¶ 1, 5). Beginning in 1995, Plaintiff served as the Administrator/ Site Manager at MSAA Manor, a property managed by PRD. (Id. ¶ 3).

    B. Plaintiff Requests A Raise And Announces Her Plans To Retire

At some point in the months prior to April 2008, Plaintiff requested a raise in anticipation of her planned retirement in two more years. (DSUMF ¶ 75). Soon after, McGrath called

---

[1]     Plaintiff's original Complaint asserted a number of additional claims that were previously dismissed by the Court. [Dkt. No. 10]. Plaintiff's only remaining claim is for age discrimination in violation of the ADEA.

2

Plaintiff on the telephone and stated "I heard you're going to retire?" (Id. ¶76).[2] Plaintiff stated she said "not for a while", to which he replied "I didn't realize you were that age." (Id.).

## C. Plaintiff Is Terminated From Her Job At PRD

According to Defendants, on April 16, 2008, McGrath, Dunn, and Beverly Nahill ("Nahill"), PRD's human resources manager, and others, met to discuss Plaintiff's future employment at PRD. (DSUMF ¶ 58). According to Defendants: (1) the meeting lasted more than two hours; (2) there was no mention of Plaintiff's age or retirement; and (3) they discussed four episodes in which they believed Plaintiff exercised poor judgment. (Id. ¶¶ 60, 62). According to Plaintiff: (1) her personnel file did not reflect any disciplinary action with regard to the matters discussed at the meeting; and (2) McGrath was aware, based on their prior meeting, that Plaintiff, who was 66 years old at the time, had requested a raise and had plans to retire. [Dkt. No 38 Plaintiff's Counter Statement of Facts ("PCSF") ¶¶ 60, 61; DSUMF ¶ 4]. Ultimately, McGrath made the decision to terminate Plaintiff's employment. (DSUMF ¶ 63). Plaintiff's eventual replacement was 41 years old at the time she was hired. (Id. ¶ 70).

---

[2] McGrath does not remember making these comments. However, because this Court must adopt the nonmoving party's version of the facts where facts are in dispute in assessing a summary judgment motion, it credits Plaintiff's version of the events. See Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

3

On April 17, 2008, Plaintiff met with McGrath and was informed that she would be terminated effective April 21, 2008. (Id. ¶ 64). Plaintiff was given four reasons for her termination: (1) she violated lease regulations by allowing a resident to have a live-in aide; (2) she failed to pay overtime to an employee that was owed overtime; (3) she improperly disciplined a subordinate; and (4) she had made a racially discriminatory comment and interfered with the hiring process of another site. (Id. ¶ 65).

D.  Proffered Reasons for Plaintiff's Termination[3]

1.  Live-in Aide

Defendants' first proffered reason for Plaintiff's termination stems from a June 2006 incident in which the Plaintiff allowed an outside individual to move in with a resident. (DSUMF ¶¶ 8, 10). It is a violation of both PRD's internal policies and federal regulations to allow an outside individual to move in with facility residents. (Id. ¶ 10). McGrath issued a memorandum to Plaintiff noting that this was a violation of PRD and federal policy that could possibly expose PRD to liability. (Id. ¶ 12).

---

[3]  Defendants' offer a fifth rationale based on an alleged additional violation of PRD policy which was discovered after Plaintiff's termination. While Plaintiff disputes these facts, it is not necessary for discussion, as after-acquired evidence of wrongdoing which would have resulted in discharge does not bar employees from any relief under the ADEA. McKennon v. Nashville Banner Publ. Co., 513 U.S. 352, 356 (1995); Bowers v. NCAA, 563 F. Supp. 2d 508, 527 (D.N.J. 2008) (applying the After-Acquired Evidence Doctrine discussed in McKennon).

4

Plaintiff states that it was her understanding that the outside individual was acting as a health aide to a disabled resident who had recently lost her benefits, which included an in-home aide. (PCSF ¶ 8). Plaintiff informed the resident that, while this accommodation technically violated the lease, PRD had an obligation, under federal law, to offer the resident reasonable accommodation to ensure the resident's safety. (Id. ¶¶ 8, 10). Accordingly, Plaintiff gave the individual eight weeks to provide assistance while the social worker obtained replacement services or found an alternative solution. (Id.). McGrath acknowledged that PRD has a general duty to provide reasonable accommodations and could be held liable in the event that it failed to do so. [Dkt. No. 38 at Ex. 9 Transcript of Deposition of McGrath ("McGrath Dep.") at 59:3-20].

2. Failure to Account for Overtime

Defendants' second proffered reason for terminating Plaintiff's employment involved an alleged failure to properly count and pay for overtime work by Richard Laird ("Laird"), a maintenance employee, per PRD policy. Laird resided at MSAA Manor but worked full-time at another of PRD's facilities. (DSUMF ¶¶ 17-19). In June 2006, Plaintiff requested, without first contacting PRD's central office, that Laird perform after-hours maintenance on a ceiling fan at MSAA Manor. (Id. ¶¶ 20-21).

5

The parties dispute whether that request potentially exposed PRD to a wage and hour violation. According to McGrath, Laird was only responsible for maintaining his own unit at the MSAA Manor and any additional work performed by Laird needed to be documented and paid through payroll. (Id. ¶ 22).

Plaintiff contends that Laird's lease required Laird to perform on-site maintenance for the entire MSAA Manor facility in exchange for free use of the unit. (PCSF ¶ 18); [Dkt. No. 38, Ex. 10 (the "Lease") p. 14]. The language in the lease appears to support Plaintiff's position. By the terms of the lease, Laird paid no rent, and signed indicating that he understood "that residing in the premises is compensation for duties [described] in the lease and attachments to the lease." (Lease at 2). Included in the duties listed in the lease addendum are to be on call for emergency calls after 5:00 PM on a rotating schedule of three weeks on call, one week off duty. (Id. at 14, 17). Plaintiff also contends that the policy she is accused of violating did not issue until July 2006, after the incident in question. (PCSF ¶ 22).

### 3. Poor Handling Of Employee Discipline

Third, Defendants assert that Plaintiff was fired, in part, due to her handling of an employee's discipline. In February 2008, Plaintiff was contacted by Linda Wilson ("Wilson"), a social worker at the MSAA Manor facility, who believed that another employee Clayton Schantz ("Schantz") was drunk. (DSUMF ¶

6

24). Plaintiff approached Schantz and, concurring with Wilson's assessment[4], sent Schantz home, issued a formal Employee Warning for being under the influence, and sent a copy to PRD central offices. (Id. ¶ 25).

According to Defendants, this action violated PRD internal policy because site managers are required, and Plaintiff failed, to discuss employee discipline with PRD's central office prior to issuing discipline. (Id. ¶¶ 26-28). Schantz later denied that he was drunk and stated that he was hung over. (Id. ¶ 31). Defendants contend that this episode reflected poor judgment by Plaintiff because the write-up was potentially slanderous, given that Plaintiff lacked concrete physical evidence of Shantz's inebriation. (Id. ¶ 60).

Plaintiff maintains that PRD had no written policy regarding employee discipline and that individual administrators had some authority to issue employee warnings independently. (PCSF ¶ 28). Plaintiff further maintains there was no PRD policy that required her to test the employee for alcohol. (Id. ¶ 29); [Dkt. No. 38 at Ex. 3 Transcript of Deposition of Wolf ("Wolf Dep.") 170:12-14). Schantz was later fired for drinking while working. (Wolf Dep. 171:18-20).

    4. Plaintiff's Alleged Racially Discriminatory

---

[4] Plaintiff personally observed that Schantz was slurring his words, had red eyes, was "acting stupid," and smelled strong (PCSF ¶ 24; Wolf Dep. at 170:2-3).

7

### Comments And Interference In Hiring Process

The fourth proffered reason for Plaintiff's dismissal was racist remarks allegedly made by Plaintiff to Nahill and her alleged interference in another site's hiring process.

In April 2008, Plaintiff had a discussion with her Daughter, Mary Anne Varesio ("Varesio"), a property manager at PRD's Mullen Manor facility, regarding a job applicant for a position at Mullen Manor that "gave [Varesio] the creeps." (DSUMF ¶¶ 37-38). Plaintiff indicated that the description of the applicant sounded exactly like an individual who had previously applied for a position at Plaintiff's facility, MSAA Manor. (Id. ¶ 39).

On April 2, 2008, Plaintiff contacted Nahill about the applicant. (Id. ¶ 40). According to Nahill, during the call, Plaintiff referred to the applicant as a "darkie," (Id. ¶ 47). Nahill believed that this was not the same individual, and later reported the incident to McGrath, believing that Plaintiff had improperly interfered with the management of the Mullen Manor facility. (Id. ¶¶ 45, 47).

Plaintiff disputes Nahill's account. According to Plaintiff, she contacted Nahill to express concern that a possible candidate for a maintenance position at the Mullen Manor facility had made inappropriate and suggestive comments during his interview with Vareiso. (PCSF ¶ 40). Plaintiff was

8

concerned that it was the same applicant that had made similar inappropriate comments during an interview for a position at MSAA Manor approximately two weeks before. (Id.; Wolf Dep. 175:21-176:7). Plaintiff contends that she was unable to recall the applicant's name and referred to him as the "black fellow" that she interviewed. (Wolf Dep. at 178:5-10). Plaintiff maintains she never used the term "darkie" (Id. 178:13-19). When Nahill responded that she did not believe it was the same person, Plaintiff replied that "it sounded like it and I just wanted to be sure." (Id. 187:17-21).

McGrath tasked Dunn to investigate the matter. (DSUMF ¶ 47). After investigating, Dunn came to the conclusion that Plaintiff had inappropriately "interjected herself in the business of a separate property" and felt her actions were discriminatory. (Id. ¶ 51). McGrath was provided with a written report of the incident and stated he was concerned about Plaintiff's bias from an employment and fair housing perspective. (Id. ¶¶ 51-52).

According to Plaintiff, Dunn failed to interview Plaintiff, Wilson, or Vareiso, or any employee beside Nahill during her investigation. (PCSF ¶ 50). Plaintiff further claims that, despite McGrath's purported concern over Plaintiff's bias, he continued to allow Plaintiff to conduct interviews for the position after learning of the phone call between Plaintiff and

9

Nahill (Id. ¶ 52). McGrath also admitted that his investigation did not reveal any evidence of racial bias or discrimination in Plaintiff's acceptance or rejection of tenants. (McGrath Deposition 105:21-106:6).

II. Standard

Summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Mollo v. Passaic Valley Sewerage Comm'rs, 406 F. App'x 664, 667 (3d Cir. 2011) (quotation and citation omitted).

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "[t]he mere existence of a scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In the face of such evidence, summary judgment is still appropriate "[w]here the record. . . could not lead a rational trier of fact to find

10

for the nonmoving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could reasonably decide.'" <u>Williams v. Borough of W. Chester, Pa.</u>, 891 F.2d 458, 460 (3d Cir. 1989) (quoting <u>Anderson</u>, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, dispositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323. (1986)(internal quotations and citations omitted). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250 (internal citations and quotations omitted).

III. <u>Analysis</u>

Defendants argue that they are entitled to summary judgment on Plaintiff's age discrimination claim.

Age discrimination claims under the ADEA are evaluated under the three-step, burden shifting framework established by

McDonnell Douglas.[5] At the first step of this analysis, a plaintiff must establish a prima facie case of discrimination.[6]

If the plaintiff succeeds, the burden of production shifts to the defendant-employer to articulate a legitimate, non-discriminatory motive for its action. Kremp v. Wachovia Bank, N.A., 451 F. App'x 151, 155 (3d Cir. 2011). Finally, if the defendant is able to articulate such a motive, the burden shifts back to the plaintiff to show that the articulated motive was a pretext for discrimination. Id. (citing Bergen Commercial Bank v. Sisler, 723 A.2d 944 at 954-55).

Here, there is no dispute that Plaintiff has established a prima facie case of discrimination and Defendants have advanced legitimate non-discriminatory reasons for Plaintiff's termination – the four episodes of alleged poor judgment. Therefore, to survive summary judgment, Plaintiff must show that the given reasons were pretext for unlawful age-based discrimination. Kremp, 451 F. App'x at 156.

Pretext can be established directly, by persuading the court that a discriminatory reason more likely motivated the

---

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[6] A prima facie case of discrimination requires a plaintiff to show: (1) that she belongs to a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that the adverse action occurred under circumstances that could give rise to an inference of intentional discrimination. Lowe v. Medco Health Solutions of Willingboro, LLC, No. 10-4823, 2012 WL 1495440, at *7 (D.N.J. Apr. 27, 2012) (citing Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

12

employer, or indirectly, by showing the employer's proffered reasons are unworthy of credence. <u>Maclean v. Shoes</u>, 863 F. Supp. 2d 387, 392 (3d Cir. 2012). Either of these is sufficient; if the employee provides evidence to discredit the proffered reasons, she does not need to adduce additional evidence beyond her prima facie case. <u>Baker v. United Def. Indus.</u>, 403 F. App'x 751, 756 n.6 (3d Cir. 2012) (stating that some evidence pointing to age-inspired animus would bolster the plaintiff's case, but his inability to do so was "not damning at the summary judgment phase"); <u>Fuentes v. Perskie</u>, 32 F.2d 759, 764 (3d Cir. 1994) (the plaintiff "need not also come forward with additional evidence of discrimination beyond his or her prima facie case" when evidence sufficiently discredits proffered reasons).

Evidence relating to the credibility of the employer's proffered justification must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence." <u>Burton v. Teleflex, Inc.</u>, 707 F.3d 417, 427 (3d Cir. 2013) (internal quotations omitted). However, when an employer presents a "bagful" of legitimate reasons, a plaintiff need not discredit each reason articulated, but he must "cast substantial doubt on a fair number of them" so that "the factfinder's rejection of some of the defendant's

13

proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons. Abels v. Dish Network Serv., LLC, 507 F. App'x 179, 184 (3d Cir. 2012) (quoting Fuentes, 32 F.2d at 764 n.7); Hood v. Pfizer, Inc., 2009 U.S. App. LEXIS 8062, at *7 n.1 (3d Cir. Apr. 16, 2009).

Here, Plaintiff has produced sufficient evidence to demonstrate pretext for three main reasons.[7]

First, the lack of any mention of the four episodes in Plaintiff's personnel file, and staleness of the two episodes that occurred in 2006, broadly calls into question the legitimacy and seriousness of these episodes.

Second, Plaintiff has put forth evidence that would allow a jury to outright reject at least two of the four reasons proffered by Defendants: (1) Plaintiff's handling of Schantz-the allegedly drunk employee; and (2) Plaintiff's use of Laird for maintenance. With respect to the Schantz issue, Defendants claim that Plaintiff improperly issued discipline without first consulting PRD's central office and that Plaintiff should have first obtained concrete physical evidence of Schantz's inebriation. But there is a genuine issue of fact as to whether

---

[7] Plaintiff argues that "[t]he one direct evidence of age discrimination, the comments of [McGrath] with regard to Wolf's age and retirement, has not been contradicted." [Docket No. 38 at 6]. This Court does not rely on that evidence in its analysis, as it does not find this innocuous statement to be probative of discriminatory intent.

14

supervisors were permitted to issue discipline without first contacting PRD's central office. And, assuming supervisors could issue discipline without first contacting PRD's central office, Plaintiff's handling of the situation appears to be entirely appropriate. The notion that it would be improper to send Schantz home, after <u>two</u> supervisors observed him to be visibly intoxicated, is absurd. With respect to the Laird issue, Plaintiff has put forth sufficient evidence that this reason was pretextual, given that: (1) according to Plaintiff, the policy she was accused of violating did not yet exist; and (2) the lease agreement appears to support Plaintiff's position.

Third, Plaintiff has put forth sufficient evidence, in toto, to discredit the remaining proffered rationales. The remaining two rationales each had serious weaknesses. With respect to the live-in-aide issue, McGrath admitted that PRD had an obligation to make reasonable accommodations in similar situations or could be liable. With respect to the allegedly racist comment and "alleged interference," Defendants' failure to conduct more than a cursory investigation[8] and McGrath's

---

[8] Defendants argue that it is irrelevant if the investigation was correct as long as their reliance on its findings was reasonable. But an overly cursory investigation may suggest pretext. <u>See Scanlon v. Jeanes Hosp.</u>, 319 F. App'x 151, 154 (3d Cir. 2009) (stating the defendant's investigation into employee misconduct was so cursory that it suggested more than mere mistake); <u>see also</u> <u>Lewis v. Genesis HealthCare Corp.</u>, 826 F. Supp. 2d 765, 777 (E.D. Pa. 2011)(denying summary judgment due to genuine issues of

15

decision to have Plaintiff continue interviewing candidates casts doubts upon the legitimacy of this proffered rationale. While the weakness in these rationales might not be sufficient alone for them to be discredited, their weakness, combined with the fact that a jury could reject the other rationales, would allow a jury to reasonably discredit these rationales too.[9]

IV. Conclusion

For the reasons set forth above, Plaintiff has provided sufficient evidence from which a reasonable factfinder could rationally find Defendants' proffered reasons unworthy of credence. Accordingly, Defendant's motion for summary judgment is DENIED.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Date: July 31, 2013

---

    material fact stemming, inter alia, from an inadequate cursory investigation into employee misconduct).

[9] See Ball v. Einstein Community Health Assocs., No. 12-1729, 2013 U.S. App. LEXIS 3114, at *13 n.8 (3d Cir. Feb. 14, 2013) (examining both employer reasons, even though the first alone would generally be fatal to the plaintiff's claim, because weaknesses in the second reason could undermine the employer's credibility as a whole); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 538 (D.N.J. 2000) (stating the plaintiff's ability to sufficiently cast doubt on three non-discriminatory reasons was enough to doubt the employer's overall credibility and relieved his need to discredit the fourth reason); Kelly v. U.S. Steel Corp., No. 11-00193, 2012 U.S. Dist. LEXIS 107475, at *17-19 (W.D. Pa. Aug. 1, 2012) (a review of the totality of the evidence presented issues of material fact and could allow a reasonable jury to find the "bagful" of proffered reasons pretextual).

16